[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an application for a turnover order under §52-356b. On May 13, 1996 the turnover applicant obtained a judgment against Ralion Corporation ("hereinafter Ralion") in the amount of $187,200.43. On February 24, 1997 the turnover-applicant caused an execution to be served upon First Union National Bank resulting in a levy of the sum $58,959.00 from a checking account in Ralion's name. On March 3, 1997, First Union debited the account in the amount of $58,959 and sent its "official check" to the levying sheriff.[1] On March 5, the bank stopped payment on the check and informed the levying sheriff in writing that the check was sent to him in error in that one of the checking accounts from which the funds were drawn was not Ralion's property. The applicant now seeks to have the court order a turnover of this sum.
First Union contends initially that a turnover order does not lie under the facts of this case because § 52-356b is inapplicable. First Union asserts that the statute does not apply because the funds sought to be turned over are not the property of and did not belong to Ralion but rather were held by First Union for itself and as agent for other creditors pursuant to a Standstill Agreement dated April 14, 1993, a Intercreditor Agreement dated March 1, 1995 and a Settlement Agreement dated June 22, 1995, all of which were executed by Ralion, First Union's predecessor and the creditors for whom First Union was acting. First Union points to specific provisions of the these agreements under which it claims that the funds in the account in question are the property of First Union.
The evidence clearly showed that on their face the checking account deposit documents gave no evidence whatsoever that the account was subject to any or all of these agreements. To the contrary, these documents showed that certain officers of Ralion still enjoyed check writing privileges on the account. It is CT Page 13548 noted that the operative agreements called for the bank to set up a special checking account with the title "Ralion Cash Collateral Account". Such an account was never set up. There was nothing in the account documents which were available on a day to day basis to the employees of the bank charged with working with them to indicate that this account was anything other than a conventional corporate checking account.
First Union's position with regard to the applicability of § 52-356b reflects a misreading of the statute. The statute authorizes the court to order "any third person to transfer to the levying officer. . . possession of specified personal property that is sought to be levied upon." Subsection (b) provides for notice to and hearing for such a third person. A turnover order therefore lies against First Union.
Among the turnover applicant's several arguments in support of a turnover order is that the respondent had a duty under §52-367a to "act upon" the execution according to § 42a-4-303
"before its midnight deadline as defined in § 42-a-4-104".
First Union on the other hand, without either statutory or case law analysis simply argues that no action was required either under § 52-367a or § 56-356c[2] because the funds contained in the checking account were the property of First Union and not the property of the judgment debtor.
In Normand Josef Enterprises. Inc. v. ConnecticutNational Bank, 230 Conn. 486, 506 (1994) our Supreme Court ruled in the context of a setoff that § 52-367a requires that in order for a bank to act upon an execution . . . before its midnight deadline it must perform "some binding overt act and make a record to evidence that action." This simply means that in order for a setoff to constitute an act within the meaning of § 52-367a the bank must have "produced some evidence of the time when it took some positive act manifesting that a setoff was actually made." Id. at 504. In the context of this case, for First Union to have acted under § 52-367a within the midnight deadline it must have taken some positive, overt act manifesting that such an arrangement existed. That act must have been unequivocal and objectively ascertainable to be overt and binding. Such action could have been accomplished in one of two ways. First Union could have acted before the fact in accordance with the internal agreements and denominated the checking account as the "Ralion Cash Collateral Account" together with such other CT Page 13549 notation or caviat on the account documents calculated to place persons dealing with the account (i.e. bank employees and levying officers) on notice and inquiry that the account was governed by these restrictive internal documents. The second way in which the bank could have acted prior to its midnight deadline even in the absence of notice on the account documents was to have called to the judgment creditor's and the levying officer's attention in a timely way the actual facts which applied to this account. The evidence is clear that First Union took neither course of action. Accordingly it failed to carry out its statutory duty under § 52-367a and so the application for turnover order is granted.
The turnover applicant has requested that the court award interest at the statutory rate from February 24, 1997 the date that the execution was levied. Both sides are ordered to submit supplemental memoranda of law not exceeding five pages in length treating the issue of appropriateness of such an award of interest within one week.
A. WILLIAM MOTTOLESE, J.